TRANSPORTATION INSURANCE COMPANY and
NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD,

        Plaintiffs,

                                        Case No. 08-15018

v.                                  Honorable Julian Abele Cook, Jr.

CITIZENS INSURANCE COMPANY OF
AMERICA,

        Defendant.

<u>ORDER</u>

This case pertains to claims by the Plaintiffs, Transportation Insurance Company and National Fire Insurance Company of Hartford, both of whom contend that the Defendant, Citizens Insurance Company of America ("Citizens Insurance"), had breached its contractual obligations with them. This dispute arose from events which surround a construction site accident that rendered severe injuries to a worker. At the time of the accident, the Plaintiffs' insured, Dailey Company, was the general contractor at the work site, whereas the Defendant's insured, Giannola Masonry Company ("Giannola Masonry"), was the masonry subcontractor.

The injured worker, a Giannola Masonry employee, initiated a lawsuit against several corporations (namely, Dailey Company, another Dailey Company subcontractor, Huron Acoustic Tile Company, and Jaimes Industries, Inc.) This action was eventually settled after the parties agreed that their respective insurance companies, as subrogees, should continue the litigation based

on several contractual agreements that were in force at the time of the accident.

On October 2, 2009, the Plaintiffs filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and/or 57[1] and the Declaratory Judgment Act, 28 U.S.C. § 2201.[2] On the same day, the Defendant filed its own dispositive motion under Rule 56 (c) with each side believing that it is entitled to a judgment as a matter of law.

## I.

The Plaintiffs' insured, Dailey Company, was chosen as the general contractor for the construction of the 41-B District Court building in Macomb County Michigan ("Macomb Court Project"). Thereafter, Dailey Company and the Defendant's insured, Giannola Masonry, entered into a subcontract ("Dailey-Giannola contract") which addressed the scope of the masonry services that would be performed on the project. During this relevant time period, Giannola Masonry was insured by the Defendant through primary and excess insurance policies.

On June 26, 2007, David Perez, Jr., an employee of Giannola Masonry, was seriously injured while working as a mason on the Macomb Court Project. According to the record in this cause, an

---

[1]Fed. R. Civ. P. 56(c) states, in part: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 57 provides, in part: "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. . . . The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

[2]The Declaratory Judgment Act states, in relevant part, that any court of the United States may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

employee of Jaimes Industries delivered a load of metal studs[3] to the project location on the day of the accident. The metal studs were to be used by Huron Acoustic Tile Company (another Dailey Company subcontractor) which was responsible for ceiling and wall tile construction. Following the delivery of these metal studs to the second floor of the Macomb Court Project, a Huron Acoustic Tile Company employee (Ray Beaman), while using a Giannola Masonry pallet jack, moved the metal studs that had been placed in "bundles" of ten to a location near the edge of the wall of the building.[4] Immediately prior to the accident, Perez had been doing masonry work on the the first floor of the building site. Around the same time, another Huron Acoustic Tile Company employee (Scott Dallas) was putting up drywall and using the metal studs while working on the second floor of the projected structure. In his deposition, Dallas testified that when he tried to retrieve a bundle of studs, the pile of remaining studs fell over the edge of the building and struck Perez, causing him to suffer irreparable injuries which left him in a quadriplegic state.[5]

Perez filed an action in the Macomb County Circuit Court against Dailey Company, Huron Acoustic Tile Company, and Jaimes Industries, Inc.(*Perez v. The Dailey Company, et al.*, Case No.

---

[3]A stud is defined in the Oxford English Dictionary as "an upright timber in a wall to which laths and plasterboard are nailed." The Concise Oxford Dictionary 1423-24 (10th ed. Judy Pearsall, ed.). However, in this case, the studs were not wood but metal.

[4]According to the deposition testimony of Huron Acoustic Tile Company employee, Scott Dallas, the studs were located about two feet four inches to two feet six inches from the edge.

[5]The Defendant asserts that the Michigan Occupational Safety and Health Administration ("MIOSHA") investigated the accident and issued citations to the Dailey and the Huron Acoustic Tile Companies. No citations were issued to Giannola Masonry.

07-3533-NO).[6] However, it should be noted that Jaimes Industries, which filed a "Notice of Non-party at Fault"[7] against Giannola Masonry in this lawsuit, was voluntarily dismissed as a Defendant.

While the *Perez* litigation was pending, Dailey Company filed a lawsuit in the Macomb County Circuit Court of Michigan, seeking indemnification and defense by Giannola Masonry (the Defendant's insured) in the *Perez* case (*Dailey Company v. Giannola Masonry*, Case No. 07-5163-NK).

The parties who were involved in the above-described lawsuits entered into settlement negotiations and ultimately reached an agreement ("Settlement Agreement") which resolved both actions. As a result, Perez received $12 million for his injuries, with Dailey Company paying $7 million, and Huron Acoustic Tile Company agreeing to pay the balance of $5 million. The Dailey Company's portion was divided between the Plaintiffs, who paid $6 million, and the Defendant, who paid $1 million. In addition and pursuant to the Settlement Agreement, Dailey Company agreed to dismiss all of its claims except for the following, which is found in paragraph 4 of the Settlement Agreement:

> The CNA Insurance Companies [the Plaintiffs] reserve the limited right to continued litigation against Citizens [Insurance] for payment of the $6,000,000 paid by the CNA Insurance Companies [the Plaintiffs] . . . , plus 50% of the costs of the defense of the Perez litigation under a theory of "additional insured" status of [Dailey Company ] under the Citizens [Insurance] policies and/or a theory of contractual

---

[6]The Plaintiffs state that Perez was legally prohibited from suing his employer Giannola Masonry "pursuant to Michigan's Workers' [Disability Compensation Act, Mich. Comp. Laws § [418.101, et seq.]"

[7] The "Notice of Non-party at Fault" filed by Jaimes Industries states that Giannola Masonry was "wholly or partially at fault" because "it was the entity that trained [Perez], controlled his work activity, including the means and methods of his work, supplied [Perez] with the tools and information necessary to perform his work safely and controlled the immediate area where [Perez] was performing his work."

indemnity from Giannola [Masonry] to [Dailey Company], but only if and to the extent covered by the Citizens [Insurance] policies. The CNA Insurance Companies [the Plaintiffs] specifically release any right to collect against any assets of Giannola [Masonry] under any theory whatsoever. It is acknowledged and understood that Citizens [Insurance] is not waiving any defenses available to any claims of the CNA Insurance Companies [the Plaintiffs], whether pursued on a theory of contractual indemnity or "additional insured" status of [Dailey Company]. By way of example only, it is agreed and understood that issues of negligence, gross negligence and sole negligence have yet to be decided, and that no payment made . . . shall be construed as an admission of negligence of any party.

(Pfs.' Ex. F; Def.'s Ex. 12, ¶ 4.)

In the now-pending action before this Court, the Plaintiffs seek to recover the $6 million that was paid by them on behalf of their insured, Dailey Company, in the *Perez* litigation, in addition to a reimbursement of attorney fees and costs.[8] The Plaintiffs maintain that they are entitled to these funds because (1) the Defendant's insured, Giannola Masonry, is contractually required to indemnify Dailey Company and (2) Giannola Masonry and/or the Defendant breached their contractual commitment to provide Dailey Company with the required "additional insured" coverage.

## II.

A party is entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If a litigant shows that there is no triable issue for a jury to decide on a particular element of the claim, the opposing party must rebut this showing by "offering affirmative evidence from which a reasonable fact finder could find in his favor." *Muhammad v.*

---

[8]Although the Plaintiffs' lawsuit also seeks reimbursement of 50% of its defense costs in the *Perez* lawsuit, the parties have addressed this issue separately. Hence, this matter was not addressed by the parties in their respective motions for summary judgment.

*Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). However, if presented, the trial court must view the evidence in the light that is most favorable to the non-moving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

If the moving party has met its burden of showing that there is no genuine issue as to a material fact, the non-moving party cannot merely rest upon the allegations in its pleadings. *See* Fed. R. Civ. P. 56(e). Thus, the non-moving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The Plaintiffs have also filed a dispositive motion in this case pursuant to Fed. R. Civ. P. 57, as well as for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Under § 2201(a) of the Declaratory Judgment Act, the Court has the discretion to declare the rights as well as the other legal relations of an interested party who seeks to obtain such a declaration. 28 U.S.C. § 2201(a). The Sixth Circuit Court of Appeals has determined that are five factors which a reviewing court should consider when seeking to determine if its discretionary powers should be exercised in a declaratory judgment action; namely, whether (1) the judgment would settle the controversy,(2) the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata," (4) the use of a declaratory action would increase

the friction between [the] federal and state courts and improperly encroach on state jurisdiction, and (5) there is an alternative remedy that is better or more effective. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (citations omitted).

In utilizing the first of these *Scottsdale* factors, the Court concludes that the entry of a declaratory judgment at this time would be inappropriate because the Plaintiffs are seeking more than a declaration of their rights vis- a- vis the Defendant. On the basis of their pleadings, it is readily apparent that they are also seeking to obtain a reimbursement of the $6 million paid by them on behalf of their insured in the *Perez* litigation as well as an assessment of attorney fees and costs.

III.

Several decades ago, the Sixth Circuit Court of Appeals declared in *Bailey v. V & O Press Co.*, that in those cases in which the jurisdiction of the federal court is based on the diversity of citizenship of the parties, "the doctrine announced in *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), dictates that federal courts must apply the law of the state's highest court. If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." 770 F.2d 601, 604 (6th Cir. 1985) (citations omitted). Adhering to this *Bailey* standard, the Court is legally bound to evaluate the parties' positions in accordance with the laws of the State of Michigan.

Under Michigan law, indemnity contracts are to be construed in the same manner as any other contract. *DaimlerChrysler Corp. v. G-Tech Prof'l Staffing, Inc.*, 678 N.W.2d 647, 650 (Mich. Ct. App. 2004) (citing *Zurich Ins. Co. v. CCR and Co.*, 576 N.W.2d 392, 395 (Mich. Ct. App. 1997)). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the

parties. To this rule all others are subordinate." *Zurich Ins. Co.*, 576 N.W.2d at 395. Thus, unambiguous indemnity contracts are to be enforced as a matter of law according to a plain reading of its terms, which may not be "impeached by extrinsic evidence." *Id.* Indeed, the Michigan Supreme Court held in 1941 that reviewing courts "must look for the intent of the parties in the words used in the instrument. [Courts] do[] not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning." *Michigan Chandelier Co. v. Morse*, 297 N.W. 64, 67 (Mich. 1941).

However, if an ambiguity is found to exist, "a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering [into] the contract." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003). Although contracts are to be construed against the drafting party, this principle is applicable only if "all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the jury unable to determine what the parties intended their contract to mean." *Id.* Michigan courts have traditionally looked to dictionary definitions as well as to "grammatical, syntactical, and punctuational clues" to aid in determining the meaning of those words that were not defined in the contract at issue. *See Peterson v. Magna Corp.*, 773 N.W.2d 564, 603 (Mich. 2009).

A.

The Plaintiffs initially contend that Giannola Masonry was contractually obligated to indemnify and defend Dailey Company in the underlying *Perez* litigation. The Defendant, on the other hand, argues that the plain meaning of the words and terms in the contract, especially when the facts are incorporated into the judicial evaluation, support its view that Dailey Company was not

entitled to any indemnification.

The indemnity provision in the Dailey-Giannola contract provides the following:

11.    INDEMNITY AND RESPONSIBILITY

Subcontractor [Giannola Masonry] specifically obligates itself to the Contractor [Dailey Company] in the following respects (and this agreement is made upon such condition) to-wit:

11.1    To protect, hold free and harmless defend and indemnify the Contractor [Dailey Company], the Owner, including its members, officers, directors and employees from all liability, penalties, costs, losses, damages, expenses, causes of action, claims, or judgments, including attorney's fees, resulting from injury to or death sustained by any person (including Subcontractor's [Giannola Masonry's] employees) or damage to property of any kind, which injury, death or damage arises out of or is in any way connected with the performance of work [] under this Subcontract.  Subcontractor's [Giannola Masonry's] aforesaid indemnity and save harmless agreement shall apply to any acts or omissions, or negligent conduct, whether active or passive, on the part of Contractor [Dailey Company] or Subcontractor [Giannola Masonry] (or their agents, subcontractors or employees); except that said agreement shall not be applicable to injury, death or damage to property arising from the sole negligence of Contractor [Dailey Company], its officers, agents, servants, or independent contractors (other than Subcontractor [Giannola Masonry]) who are directly responsible to Contractor [Dailey Company]. This indemnification agreement shall extend to claims asserted after termination, for whatever reason of this Subcontract.

(Pfs.' Ex. A; Def.'s Ex. 13, p.6.) (emphasis added).

In this case, Perez was injured while he was performing masonry services on behalf of his employer, Giannola Masonry, at the Macomb Court Project.  Thus, it is clear to this Court that Perez would not have been on the Macomb County work site in the absence of his employment commitment and designated work assignment to perform masonry services.  The language of the above-quoted indemnity provision is broad in its scope and includes any injury that "arises out of or is in any way connected with the performance" of Giannola Masonry's work under the Dailey-Giannola contract.

9

The Defendant submits that the language in the contract effectively excludes Dailey Company from indemnification because the facts indicate that the injury to Perez was not connected to its obligations under the Dailey-Giannola contract. Moreover, the Defendant contends that the accident arose out of and was connected with the actions of an employee of Huron Acoustic Tile Company, whose negligence caused the metal studs to fall on Perez. Furthermore, in arguing that the "arises out of" language is more than a mere "but for" causation because it requires an actual causal nexus, the Defendant cites a number of cases, including a Michigan Supreme Court criminal case which defines similar language. In *People v. Johnson*, the court had to construe a criminal statute to determine if a defendant should have received a sentencing enhancement. 712 N.W.2d 703, 705 (Mich. 2006). The defendant, following his conviction of two counts of third-degree criminal sexual conduct, argued on appeal that the trial judge should not have added a twenty-five point enhancement for an additional sexual penetration "arising out of" the sentencing offense. *Id.* (emphasis added). The appellate tribunal, in defining "arising out of," concluded that this phrase requires a "causal connection that is more than incidental." *Id.* at 706.[9]

However, even assuming *in arguendo* that the Defendant's stated position on the "arises out of" issue is correct, the indemnity provision also indicates that any injury which is "in any way connected with" Giannola Masonry's performance under the contract is also covered. The Merriam-Webster Dictionary defines "connected" as (1) joined or linked together or (2) having the parts or elements logically linked together.

---

[9]The Defendant also cited *Pacific Employers v. Michigan Mutual*, 452 N.W.2d 872, 875-76 (Mich. 1996) and *Century Mutual v. Feaster*, 541 N.W.2d 272, 274-75 (Mich. 1995) for the proposition that the "arising out of" phrase requires a causal connection that is more than incidental, fortuitous, or "but for."

Here, there is at least a "logical link" between the work of Giannola Masonry's work under the Dailey-Giannola contract and Perez's accident. It is logical to assume that if Perez had not been attending to his masonry work at the project site at the time of his injury, it is highly unlikely that he would have been injured in the manner which has been described in the pleadings.

The decision by the Michigan Court of Appeals in *DaimlerChrysler Corp. v. G-Tech Prof'l Staffing, Inc.*, 678 N.W.2d 647 (Mich. Ct. App. 2004) supports this conclusion. In that case - just as in the action that is now pending before this Court - an indemnity clause became a central issue. In the 2004 Michigan litigation, DaimlerChrysler entered into a contract with G-Tech for the employment of supplemental workers. Thereafter, one of these supplemental workers struck a pedestrian while operating a DaimlerChrysler-owned vehicle. 678 N.W.2d at 648. The contractual clause at issue in that case contained a provision wherein G-Tech was required to indemnify DaimlerChrysler for, *inter alia*, "bodily injury . . . arising out of or related to the performance of any work in connection with [the] contract . . . ." *Id.* at 649. The court concluded that (1) the indemnity language was expansive and (2) the term "connection" only required proof of a "logical association or development" which had been established by the aggrieved party. *Id.* Noting that (1) G-Tech had fulfilled its contractual obligation to DaimlerChrysler by providing supplemental workers, and (2) one of the supplemental workers had the authority of the DaimlerChrysler to use its vehicle at the time of collision with the pedestrian through his employment, the court found that there was a "logical association" between the accident and the contract. *Id.* at 650.

Returning to the case at hand before this Court, the Defendant asserts that inasmuch as neither Giannola Masonry nor Perez caused the accident, the incident cannot be said to have been connected to the contract. Notwithstanding this contention, the Court must look to whether there

was at least a logical connection between Perez's accident and the Dailey-Giannola contract.

The record in this cause indicates that Dailey Company had contracted with Giannola Masonry for masonry services prior to the infliction of injuries upon Perez. Like the employee in *Daimler-Chrysler* (discussed above), Perez was at the location where he was injured only because he was employed by Giannola and performing masonry services for which Giannola was receiving compensation from Dailey pursuant to the Dailey-Giannola contract. Absent the agreement between Dailey and Giannola for the latter to provide masonry services, Perez would not have been authorized to work on the Macomb Court Project where he was severely injured. Thus, the Court concludes that there is a sufficient and logical association between Perez's injury and the performance of masonry services under the Dailey-Giannola contract. Inasmuch as there is a logical association between the two, the Court concludes that (1) Perez's accident was at least connected to the performance of work under the Dailey-Giannola contract and (2) Dailey (and the Plaintiffs as subrogees) is entitled to indemnification.

## B.

The Dailey-Giannola indemnity provision also states that Giannola Masonry is required to indemnify Dailey Company for any injuries arising out of or connected to its performance under the contract except for the following exclusion:

> [S]aid agreement shall not be applicable to injury, death or damage to property arising from the sole negligence of Contractor [ Dailey Company], its officers, agents, servants, or independent contractors (other than Subcontractor [Giannola Masonry]) who are directly responsible to Contractor [Dailey Company].

(Pfs.' Ex. A; Def.'s Ex. 13, p.6.) (emphasis added).

The Plaintiffs argue that this exception does not apply because there is no evidence that only one entity (e.g., Dailey Company, the Huron Acoustic Tile Company, or its officers, etc.) was

totally (i.e., 100% ) responsible for Perez's injuries.  On the other hand, the Defendant submits that the language in the contract precludes the application of the indemnification clause where the sole negligence is that of the "general contractor-related grouping listed, *including* independent contractors directly responsible to the general contractor, i.e. including Huron [Acoustic Tile Company]."

The State of Michigan has an anti-indemnity statute which provides that in a construction contract, an agreement

> purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable.

Mich. Comp. Laws § 691.991.  Thus, an attempt by Dailey Company to seek indemnification in this case for an injury that was the result of its own negligence, its agents, or employees would be against public policy in Michigan.  However, it should be noted that the exclusion in this case is broader than the above-quoted statute because, as the Defendant notes, it precludes indemnity when the injury is caused by the sole negligence of the listed group of contractor entities; specifically, the general contractor, its officers, agents, servants, or *independent contractors directly responsible to the general contractor*." (emphasis added).

The Defendant has proffered other state anti-indemnity statutes in which the language is (1) broader than the above-cited statute and (2) almost identical to the language of the contract which is currently under review.  For instance, in the State of Alaska, it is against public policy to agree to indemnify an injury "arising . . . from the sole negligence or wilful misconduct of the promisee or the promisee's agents, servants, *or independent contractors who are directly responsible to the*

*promisee*[.]"  Alaska Stat. § 45.45.900 (emphasis added).[10]

In the case of *Hoffman Construction v. U.S. Fabrication & Erection*, 32 P.3d 346 (Alaska 2001), the Alaska Supreme Court was tasked with construing this anti-indemnity statute.  In *Hoffman*, the corporate entity of a hospital (Providence) entered into a contract with a general contractor (Hoffman) for the construction and renovation of hospital buildings.  32 P.3d at 349.  Hoffman thereafter entered into a subcontract with U.S. Fabrication to perform steel erection work on one of the structures.  *Id.* at 350.  Both the Providence-Hoffman and the Hoffman-U.S. Fabrication contracts contained indemnity provisions.  *Id.*  After the work began, several U.S. Fabrication employees sued Providence and Hoffman for the injuries that they had sustained during the course of their employment.  *Id.* at 350-51.  Providence sought indemnity from Hoffman on the basis of the parties' contract,  *Id.* at 351, claiming that the Alaska anti-indemnity statute did not foreclose indemnity "unless Providence alone was 100% at fault."  *Id.* at 355 n. 26.  However, the court disagreed with Providence's argument and held that the anti-indemnity statute "would invalidate the clause if applied when *Providence and its abatement contractors were collectively 100% at fault*."  *Id.* (emphasis added).

The Plaintiffs in the case now-pending before this Court counter by citing *Sherman v. DeMaria*, 513 N.W.2d 187 (Mich. Ct. App. 2003) which ostensibly stands for the proposition that "sole negligence" means that fault must be attributable to a single party.  In *Sherman*, the indemnification clause at issue excluded indemnification if the "claim arises out of allegations of

---

[10]Similarly, California's anti-indemnity statute prohibits agreements to indemnify an injury "arising from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants, *or independent contractors who are directly responsible to the promisee*[.]"  Cal. Civ. Code § 2782(a) (emphasis added).

the sole negligence of the Owner, the Architect, the Construction Manager or any of their respective agents, servants and employees." 513 N.W.2d at 189. The court held that inasmuch as the underlying complaint alleged that the owner, the architect, and the construction manager had been negligent, it implied that "each defendant was negligent for his injuries" and that one entity was not *solely* negligent. *Id.* at 192.

Inasmuch as the language of the indemnity clause in this case is almost identical to that in the Alaska anti-indemnity statute, the Court finds the rationale in the *Hoffman Construction* case to be persuasive. As such, it will interpret the provision at issue here in the same manner. Although the court in *Sherman* found that the exclusion applied only where the owner, the architect, or the construction manager *alone* were 100% negligent (similar to the interpretation that the Plaintiffs have advanced here), those three parties constitute separate entities. By contrast, the parties who have been listed in the exclusion are all related to Dailey Company in a range of capacities (i.e., officers, agents, servants, and independent contractors under its direct responsibility (such as Huron Acoustic Tile Company). Thus, a plain reading of the challenged language would exclude indemnification for those injuries arising out of the 100% *collective* negligence by Dailey Company and/or one its officers, agents, servants, or independent contractors (except Giannola Masonry).[11]

---

[11] A similar indemnity provision was implicitly construed in the same way in a 2001 unpublished opinion. In *Love v. Grand Trunk Western R.R.*, 2001 U.S. Dist. LEXIS 5910 (E.D. Mich. May 2, 2001), Grand Trunk had contracted with Midwest for the maintenance of railroad siding. 2001 U.S. Dist. LEXIS 5910 at *3-4. A Grand Trunk employee, Charles Love, was injured when the ground next to the railroad gave way.. *Id.* at *3. Love sued his employer, Grand Trunk, under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq., and Grand Trunk filed a cross-claim against Midwest, seeking indemnification. *Id.* at *2. The indemnity provision stated that Grand Trunk would not be entitled to indemnification from Midwest if the "loss, damage or injury is caused by the sole negligence of *Grand Trunk, its employees or agents.*" *Id.* at *5 (emphasis added). The court held that, inasmuch as (1) the employee had only alleged that Midwest was negligent, and (2) Midwest had failed to proffer any evidence to

However, based on the evidence that has been proffered by the parties, the Court cannot hold, as a matter of law, that Perez's accident was due to the sole negligence of Dailey Company and the Huron Acoustic Tile Company, as the Defendant asserts. The Defendant proffered the testimony of Dailey Company superintendent, Chuck Walsh, who opined that he did not believe that Perez or Giannola Masonry had done anything wrong on the day of the accident.

However, as the Plaintiffs argue, Walsh's deposition testimony appears to be more nuanced in that he qualified his statement with the following comment: "Like I said before, I would not direct Giannola [Masonry] where to put Giannola's people. Neil [a Giannola supervisor] had a plan, and he would direct them because he had to do all of the setup to make everything efficient for his people." (Walsh Dep. Def.'s Ex. 6, p. 54.) Specifically, Walsh, in his assessment of Perez's actions on the day of his accident, testified that he "never examined Dave Perez in respect to if he was doing anything wrong." (*Id.* at p. 92.) He also stated that he did not determine who was at fault based on his own investigation. (*Id.*) Thus, there is a genuine issue of a material fact with respect to what persons and/or entities were negligent on the day of Perez's accident.

Finally, the Plaintiffs seek indemnification because, in their opinion, they have established potential liability by showing that their settlement agreement to resolve the *Perez* litigation is reasonable. However, the Court will not attempt to address this argument because the Defendant is not contesting the issue of potential liability and "has not asserted that the settlement amount was not reasonable." (Def.'s Response, p. 6.)

---

support its freedom from fault argument, Grand Trunk was entitled to indemnification because "the accident was not due solely to the fault of Charles Love *and/or* Grand Trunk." *Id.* *15 (emphasis added). Thus, the holding by the court impliedly suggests that if the accident had been due to the fault of Love *and* Grand Trunk *collectively*, then Midwest would not have had to indemnify Grand Trunk.

Accordingly, the Court grants in part, and denies in part, the parties' respective dispositive motions on the issue of indemnification.

IV.

Turning to another issue, the Plaintiffs maintain that Giannola Masonry violated its contractual obligations to Dailey Company as an "additional insured" and firmly believe that they, as the Dailey Company's subrogees, are entitled to a reimbursement of the six million dollars paid by them to settle the underlying *Perez* lawsuit. The Defendant disagrees, contending that the Plaintiffs are not entitled to any monies.

A.

The Settlement Agreement provides, in relevant part:

> The CNA Insurance Companies [the Plaintiffs] reserve the limited right to continued litigation against Citizens [the Defendant] for payment of the $6,000,000 paid by the CNA Insurance Companies [the Plaintiffs] . . . under a theory of "additional insured" status of [Dailey Company ] under the Citizens [the Defendant] policies . . . , but only if and to the extent covered by the Citizens' [the Defendant's] policies.

(Pfs.' Ex. F; Def.'s Ex. 12, ¶ 4.) (emphasis added).

Pursuant to the Dailey-Giannola contract, the signatories agreed that Giannola Masonry would seek liability insurance and list Dailey Company as an "additional insured." The relevant provisions contain the following language:

> 5.       INSURANCE

> Before the commencement of Work, Subcontractor [Giannola Masonry] and its subcontractors, at their own expense, shall procure and maintain in force until completion of and final acceptance of the Work, the following insurance coverage with such insurers and forms of policies satisfactory to [Dailey Company]"):

> 5.1       Comprehensive General Liability, Bodily Injury and Property Damage Insurance, including coverage for damage to any property of Contractor [The Dailey Company], further and including contractual hold-harmless coverage for Contractor

17

[Dailey Company];

    A.  General Liability

        a.     $2,000,000 Each Occurrence

    . . .

5.4    Umbrella/Excess Liability

    A.     $1,000,000 Each Occurrence

    . . .

5.5    Subcontractor['s [Giannola Masonry's] Commercial General Liability ["CGL"] policy shall be endorsed to add Daily Company, the Owner and any additional parties as required by the Prime Contract Documents, as additional insureds with respect to ongoing and completed operations performed by the Subcontractors under this Subcontract Agreement and the Contract Documents. Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional [i]nsured for at least 3 years after completion of the work. Such insurance afforded to Dailey Company and Owner as add[it]ional insured under Subcontractors' [Giannola Masonry] policies shall be primary and not excess over, or contributing with, any insurance purchased or maintained by Dailey Company or Owner. Subcontractor [Giannola Masonry] hereby waives subrogation of claims against Dailey Company, and the Owner, Their Agents, Employees, and Servants.

(Pfs.' Ex. A; Def.'s Ex. 13, p. 3.) (emphasis added).

Inasmuch as the Plaintiffs, acting upon their obligations under the Settlement Agreement, agreed to pursue a claim of an "additional insured" "only if and to the extent that it is covered by the Citizens' [the Defendant's] policies[,]" the Court must examine the relevant insurance policies obtained by Giannola Masonry. First, the Giannola Masonry primary policy - which has a limit of $1,000,000 per occurrence - contains the following language:

1.    Additional Insured by Contract, Agreement or Permit

    Under Section II - Who Is an Insured, Paragraph 5. Is added as follows:

5.a.    Any person or organization with whom you agreed, because of a written contract, written agreement or permit to provide insurance, is an insured, but only with respect to:

    (1) "Your work" for the additional insured(s) at the location designated in the contract, agreement or permit; . . . .

> This insurance applies on a primary basis if that is required by the written contract, written agreement or permit.

(Def.'s Ex. 16 (Commercial General Liability Special Broadening Endorsement - Contractors), p.

1.) (emphasis added).

SECTION V – DEFINITIONS

22.     "Your work"
   a.   Means:
        (1)  Work or operations performed by you or on your behalf . . . .

(Def.'s Ex. 16 (Commercial General Liability Coverage Form), p. 15.) (emphasis added).

The Defendant contends that, according to the language within these insurance policies, Dailey Company does not qualify as an "additional insured" because the accident involving Perez was not "with respect to" Giannola Masonry's work at the Macomb Court Project site. Rather, the Defendant submits that Perez's injury is "with respect to" the conduct of the Dailey and Huron Acoustic Tile Companies on the date of the accident. However, the undisputed facts in this case belie this contention.

The Merriam-Webster Dictionary defines "with respect to" as "with reference to: in relation to." Here, the injuries that were sustained by Perez occurred while he was (1) employed by Giannola Masonry and (2) providing the Dailey Company with masonry services that were agreed upon under the Dailey-Giannola contract. Clearly Perez's injury occurred with respect to his work assignment as a Giannola Masonry employee pursuant to an agreement between his employer and the Dailey Company. Thus, the Court concludes that Dailey Company qualifies as an "additional insured" under the Defendant's primary policy.

Moreover, the excess policy that had been issued to Giannola Masonry by the Defendant, with a $6 million each occurrence limit, provides, in relevant part:

SECTION II – WHO IS AN INSURED

3.    Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

Additional insured coverage provided by this insurance will not be broader than the coverage provided by the "underlying insurance."

(Def.'s Ex. 17, (Commercial Liability Umbrella Coverage Form) p. 10.) (emphasis added).

"Underlying insurance" is defined in the contract as "any policies of insurance listed in the declarations under the schedule of 'underlying insurance.'" (*Id.* at 16.) The declarations section referenced in this clause includes the Giannola Masonry primary policy. Therefore, inasmuch as Dailey Company is an "additional insured" under the Giannola Masonry primary policy, it is also entitled to excess coverage pursuant to the excess policy issued to Giannola Masonry by the Defendant.

### B.

The parties also dispute the limits on the "additional insured" coverage that the Plaintiffs, as the subrogees of Dailey Company, are entitled to receive. Although the Plaintiffs submit that they are entitled to the reimbursement of the entire $6 million that it paid to settle the *Perez* lawsuit, the Dailey-Giannola contract clearly and unambiguously requires only $2 million per occurrence in primary coverage and $1 million in excess coverage. Thus, the most that the Plaintiffs would be entitled to recover under their own contract is $3 million. However, the Settlement Agreement states that the Plaintiffs are bound by the terms of those insurance policies that had been issued to Giannola Masonry by the Defendant. As a result, the Court must also look to those provisions in making the

appropriate ruling on this issue.

First, the insurance contract issued to Giannola Masonry by the Defendant states that primary coverage is limited to $1 million per occurrence. Thus, despite the requirement in the Dailey-Giannola contract that Giannola Masonry obtain primary coverage of $2 million per occurrence, it only identifies $1 million per occurrence. Inasmuch as the Plaintiffs agreed to pursue an "additional insured" claim "only if and to the extent covered by [the Defendant's] policies[,]" the most that they can recover from the Defendant in primary coverage is $1 million.

In addition, the excess coverage provision of the Giannola Masonry insurance contract states that "the *most* we [the Defendant] will pay on behalf of the additional insured [Dailey Company] is the *amount of insurance required by the contract* [Dailey-Giannola contract], less any amounts payable by any 'underlying insurance.'" ((Def.'s Ex. 17, (Commercial Liability Umbrella Coverage Form) p. 10.) (emphasis added). Inasmuch as the Dailey-Giannola contract only requires $1 million in excess coverage, the Plaintiffs can only recover that amount in excess coverage.

Therefore, the Court determines that Dailey Company does qualify as an "additional insured." Moreover, the Court concludes that under (1) the Dailey-Giannola contract, (2) the Giannola Masonry insurance contract, and (3) the Settlement Agreement, the Plaintiffs - as subrogees of Dailey Company-- are entitled to $1 million in primary coverage and $1 million in excess coverage. However, inasmuch as the Defendant has already paid $1 million to settle the *Perez* litigation, the Plaintiffs are entitled to recover $1 million pursuant to the "additional insured" contract provision.

Accordingly, the Court grants in part, and denies in part, the parties' respective motions for summary judgment on the issue of Dailey Company's status as an "additional insured."

The Plaintiffs have also requested attorney fees and costs incurred "in having to pursue [the Defendant] for indemnification in this action." The Defendant opposes this request because, in its view, the Settlement Agreement that the parties entered into to settle the *Perez* litigation in the state court litigation forecloses the sought-after award.

The indemnification provision of the Dailey-Giannola contract states, in part:

> 11.6   And Subcontractor [Giannola Masonry] shall indemnify Contractor [Dailey Company] against, and save it harmless from any and all loss, damage, costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provisions or covenant of this Subcontract.

(Pfs.' Ex. A, at pp. 3, 6.) (emphasis added).

However, the parties' settlement agreement states that the Plaintiffs only reserved "the limited right to continued litigation against [the Defendant] for [1] the payment of the $6,000,000 paid by the [Plaintiffs] . . .  plus [2] 50% of the costs of the defense of the *Perez* litigation under a theory of 'additional insured' status of Dailey Company under the [Defendant's] policies and/or a theory of contractual indemnity from Giannola [Masonry] to Dailey Company . . . ." (Pfs.' Ex. F; Def.'s Ex. 12, ¶ 4.) The Plaintiffs, while citing to the Dailey-Giannola contract, have failed to address the Settlement Agreement, in which the presence of unambiguous language forecloses any attempt by the Plaintiffs to recover anything other than the $6 million, to which reference has been made above, and one half of the defense costs in the *Perez* litigation (which has been resolved by the parties). Therefore, the Court determines that the Plaintiffs are precluded from seeking attorney fees and costs related to the instant action.

VI.

In conclusion, the Court holds that (1) the indemnification provision of the Dailey-Giannola contract was triggered by Perez's accident but (2) the Plaintiffs may be indemnified only if the injury did not result from the *collective* "sole negligence of Contractor [the Dailey Company], its officers, agents, servants, or independent contractors (other than Subcontractor [Giannola Masonry]) who are directly responsible to Contractor [Dailey Company]."

In addition, the Court determines that Dailey Company qualifies as an "additional insured" under the Giannola Masonry insurance contract; however, the Court also concludes that the Plaintiffs' recovery – as explained above – is limited to $1 million primary coverage and $1 million excess coverage, minus the $1 million already paid by the Defendant in the Settlement Agreement.

Finally, the Court finds that the Plaintiffs are not entitled to attorney fees and costs, as this claim is foreclosed by the terms of the settlement agreement.

Accordingly and for the reasons that have been stated above, the Court grants in part, and denies in part, the parties's respective motions for summary judgment.


IT IS SO ORDERED.

Dated:  August 17, 2010                            s/Julian Abele Cook, Jr.
        Detroit, Michigan                          JULIAN ABELE COOK, JR.
                                                   United States District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 17, 2010.

                                          s/ Kay Doaks
                                          Case Manager